IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL THOMASTON, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 12-161 |
| vs. ) | Judge Arthur J. Schwab |
| ) | Magistrate Judge Maureen P. Kelly |
| PHYSICIAN ASSISTANT ) | |
| CHRISTOPHER MEYER; ) | |
| SUPERINTENDENT BRIAN V. ) | |
| COLEMAN; UNIT MANAGER ) | |
| REBECCA PETRUS; UNIT MANAGER ) | ECF Nos. 20, 31 |
| SCOOT HOWELL, ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

Michael Thomaston ("Plaintiff") is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), who is currently incarcerated at the State Correctional Institution ("SCI") at Fayette. Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Defendants Superintendent Brian V. Coleman ("Coleman"), Unit Manager Rebecca Petrus ("Petrus"), Unit Manager Scott Howell ("Howell") (collectively, "the DOC Defendants"), and Physician Assistant Christopher Meyer ("Meyer"), alleging that Defendants have violated his rights under the Fourteenth Amendment to the United States Constitution by disseminating his medical condition to his cellmates. [ECF No. 4].

Presently before the Court is a Motion to Dismiss filed by the DOC Defendants, [ECF No. 20], and a Motion to Dismiss filed by Defendant Meyer. [ECF No. 31]. For the following reasons, it is respectfully recommended that both Motions be granted.

## II.     REPORT

### A.     FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint and the exhibits attached thereto, Plaintiff has suffered from a medical condition since childhood which causes him to urinate and defecate while he is asleep. [ECF No. 4-2, p. 2; ECF No. 4-3, p. 2]. While at SCI Fayette, Plaintiff has been prescribed Texas catheters, red bio-hazard bags, leg bags/drainage bags, extension tubes and diapers to address his condition. [ECF No. 4, ¶¶ 19, 24(a); ECF Nos. 4-6, 4-7, 4-8]. Although these items were largely prescribed by Defendant Meyer, Plaintiff asserts that Meyer nevertheless failed to make "assessments with the medical orders and prescriptions to protect Plaintiff's privacy interests" in contravention to DOC Policy. Specifically, Plaintiff contends that Meyer's failure to authorize single cell status, or "Z" Code, constitutes a violation of his right to privacy since his medical condition is consequently made known to his cellmates. [ECF No. 4, ¶¶ 19, 24].

Plaintiff also alleges that the DOC Defendants have violated his rights under the Fourteenth Amendment by continuing to deny him single cell status after they became aware of Plaintiff's condition. [ECF No. 4, ¶¶ 25, 26]. Plaintiff contends that he submitted a Request to Staff on August 12, 2010, informing his Unit Manager, Defendant Howell, of his condition and inquiring whether his medical confidentiality will be protected. [ECF No. 4, ¶ 12; ECF No. 4-2, p. 2]. Howell indicated in his response that Plaintiff would "[a]gain . . . need to discuss [the matter] with your Unit Team and Medical." [ECF No. 4, ¶ 13; ECF No. 4-2, p. 2].

It appears that Plaintiff also authored a Request to Staff to Deputy Superintendent Major Armel dated March 14, 2011, which was copied and forwarded to Defendant Petrus. Therein Plaintiff discussed his medical condition and complained that he has received numerous

2

misconducts for threatening, assaulting or refusing a "cellie" in an effort to protect his medical confidentiality. [ECF No. 4, ¶¶ 14, 15; ECF No. 4-3, pp. 2-3]. Plaintiff was told in response that his condition would be reviewed in accordance with DOC policy. [ECF No. 4-3, p. 2].

It also appears from the Complaint and the documents that Plaintiff has attached thereto that on April 6, 2011, the Program Review Committee ("PRC") conducted a periodic review of Plaintiff's placement in disciplinary custody where he had apparently been placed for refusing to obey an order to take a cellmate. [ECF No. 4, ¶ 16; ECF No. 4-4, p. 2]. The PRC noted that Plaintiff's custody status would revert to Administrative Custody ("AC") on April 7, 2011, and that Plaintiff's request for "Z" Code was currently being reviewed. [ECF No. 4-4, p. 2]. On April 13, 2011, Plaintiff, who was in AC, received an AC Review by the PRC indicating that Plaintiff was "[r]ecently reviewed for 'Z' Code again," and that he did not receive approval. [ECF No. 4, ¶ 17; ECF No. 4-5, p. 2]. The PRC also indicated that Plaintiff would be given an order to go to the general population that night and that if he refused to go he would receive another misconduct. [ECF No. 4, ¶ 18; ECF No. 4-5, p. 2].

In addition, the record shows that Plaintiff filed two grievances on October 18, 2011: Grievance No. 385748, in which he complains that Defendant Meyer violated his right to privacy by ordering medical supplies for him without assessing his need for housing restrictions; and Grievance No. 385746, in which he raises the issue of Defendant Coleman's supervisory liability for the violations of Plaintiff's right to privacy. [ECF No. 4, ¶¶ 21, 22; ECF Nos. 4-9, 4-10]. Based on these grievances, Plaintiff contends that Coleman had "constructive notice and knowledge of plaintiff's medical information and conditions and plaintiff's various attempts to protect his privacy of his medical conditions from non-consensual dissemination of the medical

3

information to other inmates/cellmates . . . ." [ECF No. 4, ¶ 20]. Plaintiff further contends that Coleman's refusal to review Plaintiff's right to protect his privacy of medical information and his request to reside in a single cell is violative of the Fourteenth Amendment. [ECF No. 4, ¶ 26].

Plaintiff initiated this suit on February 10, 2012, alleging that Defendants' actions not only violate his right to privacy but are in contravention of his Fourteenth Amendment substantive due process rights. The DOC Defendants filed a Motion to Dismiss on July 5, 2012, and Defendant Meyer filed a similar motion on September 11, 2012. [ECF Nos. 20, 31]. Plaintiff responded to the Motions on August 7, 2012, and October 9, 2012, respectively. [ECF Nos. 27, 36]. As such, both Motions are ripe for review.

**B.      STANDARD OF REVIEW**

In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the United States Supreme Court held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. In assessing the sufficiency of the complaint, the Court must accept as true all allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. <u>Odd v. Malone</u>, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See <u>California Public Employees' Retirement System v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004), *citing* <u>Morse v. Lower Merion School District</u>, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations; rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. at 555, *citing* <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (Finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice; noting that the complaint "must allege facts suggestive of [the proscribed] conduct;" and requiring plaintiff to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

C. DISCUSSION

Plaintiff has brought his claims pursuant to Section 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), citing Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Id.

In this case, Plaintiff contends that he has been deprived of his substantive due process rights provided by the Fourteenth Amendment.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The substantive

due process prong of the Fourteenth Amendment protects against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). To establish a substantive due process claim, a plaintiff must demonstrate that: 1) the defendant engaged in conduct under color of state law; 2) that the conduct deprived the plaintiff of a protected liberty interest; and 3) the deprivation of that liberty interest shocks the conscience. Ashton v. City of Uniontown, 459 F. App'x 185, 189 (3d Cir. 2012), *citing* Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008). Moreover, the United States Court of Appeals for the Third Circuit has consistently held that "only the most egregious official conduct shocks the conscience." Id. *quoting* United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 400 (3d Cir. 2003). See Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir 1999), *quoting* County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) ("To generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience'").

Here, Defendants do not dispute that they were acting under color of state law but argue only that Plaintiff has not alleged sufficient facts to establish the second prong of the due process inquiry, *i.e.*, that Defendants have deprived him of a protected constitutional interest.[1] See Skiles v. City of Reading 449 F. App'x 153, 157 (3d Cir. 2011), *citing* McCurdy v. Dodd, 352 F.3d 820, 825–26 (3d Cir. 2003) (recognizing that § 1983 protects only the deprivation of an individual's constitutional rights). Specifically, Defendants argue that Plaintiff has failed to state a plausible claim that he has been denied his right to privacy because the Complaint is devoid of any facts regarding what medical information was disclosed, by whom it was disclosed or to whom it was

---

[1] Because the arguments made by Defendant Meyer in his Motion largely mirror those made by the DOC Defendants in their Motion, the Court will address them in tandem.

disclosed. As previously discussed, however, Plaintiff has alleged in the Complaint that the medical information being disseminated is the fact that he suffers from a condition whereby he soils himself while he is asleep and that Defendants have disseminated that information to his cellmates by double celling him and refusing to give him "Z" Code status. Plaintiff therefore has arguably alleged sufficient facts establishing what medical information is being disclosed, by whom it is being disclosed and to whom. The Court nevertheless finds that these allegations fall short of demonstrating that Plaintiff's right to privacy has been violated.

It is well established that an individual has a constitutional right to privacy which protects "the individual interest in avoiding disclosure of personal matters." Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001), *quoting* Whalen v. Roe, 429 U.S. 589, 599 (1977). It is equally well established that prison inmates do not shed all fundamental protections of the Constitution at the prison gates but rather "retain those rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system." Id., *citing* Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus, although an inmate has a right to keep medical information confidential, he or she does not enjoy a right of privacy in medical information to the same extent as a free citizen. Id. Rather, as found by the United States Court of Appeals for the Third Circuit, a prisoner's constitutional right to privacy in his or her medical records "is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." Id. at 317.

It cannot be disputed in this case that the DOC has a penological interest in managing prison administration, including housing placements and medical treatment, without interference by the courts. See McKune v. Lile, 536 U.S. 24, 39 (2002) ("[i]t is well established that the

7

decision where to house inmates is at the core of prison administrators' expertise"). See also Shaw v. Murphy, 532 U.S. 223, 229 (2001), *quoting* Procunier v. Martinez, 416 U.S. 404-05 (1974) ("because the 'problems of prisons in America are complex and intractable,' and because courts are particularly 'ill equipped' to deal with these problems, . . . we general have deferred to the judgments of prison officials"). Indeed, the Court of Appeals for the Third Circuit has specifically held that prisoners do not have a due process right to be single-celled. Hodges v. Wilson, 341 F. App'x 846, 849 (3d Cir. 2009), *citing* Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981). See Bacon v. Minner, 229 F. App'x 96, 98 (3d Cir. 2007) ("Generally, prisoners under confinement do not have inherent liberty interests in particular modes, places, or features of confinement"). Plaintiff requested, and was reviewed for single celling but was not approved. It is not the Court's role to interfere with that decision or to otherwise dictate Plaintiff's housing or medical treatment. See Ball v. Famiglio, C.A. No. 08-700, 2011 U.S. Dist. LEXIS 155253, at *26-27 (M.D. Pa. Oct. 7, 2011) ("penological order could be adversely affected if the Court began dictating the housing or medical treatment for the inmate . . .").

Moreover, it is not at all clear to the Court that Plaintiff's right to privacy is implicated here or that giving him "Z" Code status will provide him with the privacy he seeks. Plaintiff is not only provided with a fair number of medical supplies, including Texas catheters, red biohazard bags, leg bags/drainage bags, extension tubes and diapers, that he brings into his cell with regularity, but the biohazard bags are also removed from his cell periodically. [ECF No. 4, ¶¶ 19, 24(a); ECF Nos. 4-6, 4-7, 4-8]. In the prison context, where privacy is inherently at a minimum, these events can hardly take place unnoticed. See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 621 F.3d 296, 301-02 (3d Cir. 2010), *aff'd* ___ U.S. ___, 132

S. Ct. 1510 (2012). Although this Court is sympathetic to Plaintiff's condition, his situation is not unlike an inmate who needs a cane or a wheelchair because of an impairment that affects his ability to ambulate. The very nature of the treatment renders the condition an "unprivate" matter. As such, it does not appear that Plaintiff's right to privacy has been compromised simply because he is not single celled.

Even if Plaintiff were able to establish that his right to privacy has been violated, however, his Fourteenth Amendment claim would nevertheless fail as Defendants' conduct in declining to designate him as "Z" Code is not so egregious as to shock the conscience.

As the United States Court of Appeals for the Third Circuit has stated:

> Whether executive action is conscience shocking and thus "arbitrary in the constitutional sense" depends on the context in which the action takes place. In particular, the degree of culpability required to meet the "shock the conscience" standard depends upon the particular circumstances that confront those acting on the state's behalf. As the Court explained in *[Cnty. of Sacramento v.] Lewis*:
>
>> We have ... rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.... It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level....
>
> 523 U.S. at 848-49, 850 . . . [(1998)] (quotation omitted).

Schieber v. City of Philadelphia, 320 F.3d 409, 417-18 (3d Cir. 2003).

Here, Plaintiff has not alleged that Defendants' have intended to harm him. Indeed, as suggested by Defendants, they have not deliberately disseminated Plaintiff's medical condition to

9

anyone but rather Plaintiff's medical information has been divulged by virtue of his housing status. Moreover, Plaintiff acknowledges that he is being double celled because of a bed issue and not because any animus or intent to harm by Defendants. [ECF No. 4-3, pp. 2-4].

Further, Plaintiff has not specifically alleged in what manner he has been harmed other than to make a general reference to "gossip," "harassment," and "fights." [ECF No. 4, ¶ 15]. It appears, however, that it is Plaintiff who has initiated the assaults against his cellmates and not the other way around. See [ECF No. 4-3, p. 2]. Absent any assertions that word of Plaintiff's condition has spread through the prison and/or that he has been the target of harassment, discrimination or violence from other inmates as a result of his cellmates knowing of his condition, it cannot be said that the Defendants' conduct is so ill conceived or malicious that it shocks the conscience. See Rodrigues v. Ames, 287 F. Supp. 2d 213, 220 (W.D. N.Y. 2003). Plaintiff therefore has failed to state a claim under the Fourteenth Amendment and his Complaint is properly dismissed.[2]

Although the United States Court of Appeals for the Third Circuit has held that when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint whether or not the plaintiff has asked to do so, the Court is not required to allow an amended complaint to be filed where it would be inequitable or futile. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), *citing* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Because there does not appear to be any additional facts that would demonstrate that Plaintiff's right to privacy has been violated or that would otherwise give rise to a civil rights violation, allowing Plaintiff to file an amended

---

[2] Having so found, the Court need not, and has not, discussed Defendant Meyer's alternative argument that Plaintiff's claim for punitive damages should be dismissed.

complaint would appear to be futile. The Court therefore should decline to do so.

### D. CONCLUSION

For the foregoing reasons, is respectfully recommended that the Motion to Dismiss filed by the DOC Defendants, [ECF No. 20], and the Motion to Dismiss filed by Defendant Meyer, [ECF No. 31], be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

    Respectfully submitted,

    /s/ Maureen P. Kelly
    MAUREEN P. KELLY
    United States Magistrate Judge

Date: 27 November, 2012

cc:    The Honorable Arthur J. Schwab
     United States District Judge

     Michael Thomaston
     DE-7486
     SCI Fayette
     P.O. Box 9999
     Labelle, PA 15450-0999

All Counsel of Record Via CM-ECF